IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDER WHALEN,

               Plaintiff,                         CV-07-1887-ST

     v.                                           FINDINGS AND
                                                     RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of Social Security,

               Defendant.

STEWART, Magistrate Judge:

     Plaintiff, Alexander Whalen, challenges the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g).

     Whalen was insured for the purposes of Title II through June 30, 1996. Admin. R. 117. He must establish that he was disabled on or before that date to prevail on his claim. 42 USC § 423(a)(1)(A); *see Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998). The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20

1 - FINDINGS AND RECOMMENDATION

CFR § 404.1520. *Bowen v. Yuckert*, 482 US 137, 140 (1987). The ALJ determined that Whalen retained the residual functional capacity ("RFC") to perform work in the national economy through the date his insured status expired.

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Tommasetti v. Astrue,* 533 F3d 1035, 1039 (9th Cir 2008). Whalen contends the ALJ improperly assessed his RFC and elicited testimony from the vocational expert ("VE") with assumptions that did not accurately reflect his functional limitations. For the following reasons, the Commissioner's decision should be affirmed.

**I.    RFC Assessment**

The RFC assessment describes the work-related activities a claimant can do on a sustained, regular, and continuing basis, despite the functional limitations imposed by his impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 *5. Whalen contends the ALJ improperly discredited his subjective statements and those of his wife, rejected the opinions of mental health care providers, and gave insufficient weight to the disability rating decision of the Department of Veterans' Affairs ("VA"). Whalen argues these errors led the ALJ to arrive at an RFC assessment that did not accurately reflect all of his functional limitations.

**A.    Credibility Determination**

Whalen alleged disability beginning April 1, 1991, due to coronary artery disease, hypertension, and posttraumatic stress disorder ("PTSD"). Admin. R. 110, 124. He testified that he stopped working because of panic attacks, anxiety, and anger. *Id.* at 41, 124. Whalen testified he has had PTSD symptoms since returning from the war in Vietnam in 1970. *Id.* at 48. He worked steadily for the next 20 years, including six years as a military recruiter which ended in December 1990, when his enlistment was not extended, reportedly due to a past heart condition. *Id.* at 57-58. Whalen worked from April to June 1992 as a store clerk. *Id.* at 179. He quit that job because he could not tolerate the close supervision it involved. *Id.* at 59.

Whalen testified that anxiety, panic attacks, and nervousness continue to prevent him from working. *Id.* at 47. He does not like to be closed in and will not use elevators or fly in airplanes. *Id.* at 47, 50. Under stress, he becomes nervous and his blood pressure rises. *Id.* at 49-50. He is not comfortable in crowds. *Id.* at 51. He tried to take community college classes, but could not tolerate them and quit after less than two weeks. *Id.* at 54. Whalen testified his condition has been worsening over time. *Id.* at 60.

Whalen testified he has not been employed since June 1992, but engaged in volunteer work for his church, doing house painting, carpet installation, and carpentry for elderly church members. *Id.* at 545. This was irregular unpaid work. *Id.* at 63, 545-46. Whalen indicated he takes long daily walks, goes out occasionally to visit friends or relatives, performs his own care and grooming, and is able to help with household chores and meal preparation. *Id.* at 53, 148, 156.

The ALJ acknowledged that Whalen had some symptoms of PTSD and resulting functional limitations during the relevant period. *Id*. at 465-66. The ALJ found Whalen could do

3 - FINDINGS AND RECOMMENDATION

only simple, routine, repetitive type work, requiring no more than occasional interactions with co-workers, supervisors, and the general public. *Id.* at 466. The ALJ found Whalen's allegations that he had limitations in excess of this RFC assessment during the relevant period not entirely credible. *Id*. at 467-68.

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986). There is no dispute about the first stage in this case.

At the second stage, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993); *Smolen*, 80 F3d at 1283. An ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

The ALJ considered proper factors in evaluating Whalen's credibility. He reviewed the objective medical evidence and found it did not support disabling limitations during the relevant period. Whalen did not report PTSD symptoms to health care providers or seek mental health treatment during the relevant period. The first record suggesting mental health problems did not

appear until November 1996. Admin. R. 296-301. The ALJ could reasonably draw an adverse inference as to credibility from Whalen's failure to seek treatment for symptoms that allegedly rendered him disabled until nearly five years after the alleged onset of disability in 1991.

The objective evidence also was lacking regarding Whalen's other allegedly disabling conditions. In January 1990, Whalen had an abnormal EKG which was suspicious for a previous myocardial infarct that had been silent or asymptomatic and occurred at an indeterminate time in the past. *Id.* at 375-76, 378, 380, 383, 387. In June 1991, diagnostic images of the chest showed no abnormalities. *Id.* at 369. In October 1991, an EKG stress test met the minimum criteria for ischemic heart disease, but Whalen showed normal exercise tolerance. *Id.* at 317, 343. In July 1998, objective measures showed Whalen had normal cardiac function without mitral valve abnormalities. *Id.* at 304-05, 310-11. In December 1998, Donald Wysham, M.D., opined that Whalen continued to have normal function and effort tolerance, and Whalen refused to have this confirmed by treadmill stress test. *Id.* at 304-05. The ALJ could reasonably draw an adverse conclusion as to credibility from the absence of objective evidence supporting functional limitations during the relevant period.

The ALJ also considered Whalen's employment history, noting that he worked successfully for 20 years after the alleged onset of PTSD symptoms in 1970 without any indication that those symptoms interfered with his work-related functions. *Id*. at 468. Whalen was able to work with recruits and deal with the public as an army recruiter for over six years immediately preceding the alleged onset of disability. Whalen indicated he quit that job in April 1991 due to anxiety, nervousness, and inability to handle the pressure. *Id.* at 56-58, 297, 463. The record shows, however, that he was discharged from the military in December 1990 for

reasons unrelated to anxiety or other PTSD symptoms. *Id.* at 56-58, 376. The ALJ could reasonably draw an adverse inference as to credibility from the inconsistency between Whalen's statement and the evidence that Whalen did not stop working due to his allegedly disabling condition. *See Bruton v. Massanari*, 268 F3d 824, 828 (9th Cir 2001) (ALJ can draw adverse inference from evidence the claimant stopped working for reasons other than allegedly disabling medical condition).

Additionally, Whalen told John Finney, Ph.D., in November 1996 that he had been self-employed from January 1991 until June 1996 doing house painting, carpentry and carpet installation. *Id.* at 297. In December 1996, he told Linda Halleck, MSW, that he had been self-employed doing odd jobs "for the last four years." *Id.* at 331. The ALJ noted that Whalen did not report any earnings during this time, and his wife reported that he had no earnings from self-employment during the relevant period. The absence of earnings is consistent with Whalen's later testimony that he engaged in these activities on a volunteer basis. *Id.* at 463. However, the ALJ could reasonably question the accuracy of his statements to healthcare providers because his statements about self-employment do not appear to be entirely candid.

The ALJ found Whalen's reported activities during the relevant period inconsistent with the limitations he claimed. Whalen's reported odd jobs, whether paid or not, could be deemed inconsistent with his asserted inability to interact with people. In addition, Whalen reported in July 1999 being active in his church, doing volunteer work for the church, conducting bible school, volunteering with the youth group, and raising funds and collecting donations for the youth group. *Id.* at 195. Whalen also enrolled in classes at a community college. *Id.* at 297, 323, 330. He testified that he lasted only a week and a half at school because he could not

handle being closed in with a classroom full of people. *Id.* at 54. Contemporaneous reports indicate he dropped out after falling behind when he went out of town to attend his brother's funeral. *Id.* at 323. In November 1997, Whalen indicated he hoped to get back into school. *Id.* Contrary to his asserted difficulty being around people, Whalen told Ms. Halleck he enjoyed working with people and wanted to work in human resources. *Id.*

In his examination notes in November 1996, Dr. Finney indicated Whalen had been playing in a band at a bar the night before his examination. *Id.* at 296. Whalen testified that he did not play in a band, but that on the occasion Dr. Finney described, he had attended a jam session with friends and played the spoons. *Id.* at 52, 62. The ALJ could reasonably find the described activities inconsistent with Whalen's assertions that he cannot be around people and isolates as much as possible.

The ALJ also noted other indications that Whalen was not entirely candid with healthcare providers. For example, in December 1996 in his interview with Ms. Halleck, he denied ever using alcohol. *Id.* at 330. One month previously, he had smelled of alcohol during his interview with Dr. Finney and tests detected a significant level of blood alcohol. *Id.* at 296. In 1995, Whalen was arrested for driving under the influence of alcohol. *Id.* at 195. At an examination in January 1998, Whalen reported drinking one to two beers daily and again was noted to have the smell of alcohol. *Id.* at 295. The ALJ could reasonably draw an adverse inference as to credibility from these inconsistencies.

In deciding whether to accept Whalen's subjective statements, the ALJ considered appropriate factors and reached conclusions that are supported by substantial evidence in the record. The ALJ reasonably found the objective medical evidence, Whalen's work history,

activities, and statements to health providers, and the record as a whole, more consistent with the limitations in the RFC assessment than with Whalen's assertions of disabling symptoms during the relevant period. The findings are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit Whalen's testimony. *Orteza,* 50 F3d at 750. Even if the record supports another interpretation of the evidence more favorable to Whalen's claim, the court cannot disturb the Commissioner's rational findings of fact. *Tommasetti*, 533 F3d at 1038. Accordingly, the ALJ's credibility determination should not be disturbed.

### B.      Lay Witness Statements

Whalen's wife provided a written questionnaire and an affidavit. Admin. R. 157-68, 429-30. In the questionnaire, Mrs. Whalen generally described typical daily household and social activities. She indicated Whalen got along very well with friends and family members and did not have problems relating to people he encountered in the general public, such as store clerks, doctors, neighbors, and so forth. *Id.* at 158-60. She noted that Whalen sometimes has passing moods in which he is argumentative and disagreeable, but generally gets along well with others and stays in good spirits. *Id.* at 168. Mrs. Whalen stated that he sometimes has difficulty staying focused, does not like to be confined, and seems to lack ambition. *Id.* at 167. In her affidavit, she stated that Whalen had not earned income from self-employment during the relevant time, but had done a lot of volunteer work for their church. *Id*. at 429-30. She said Whalen sometimes exhibited anger control problems and tended to withdraw from stressful situations. *Id.* at 430.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F3d 1050, 1053 (9th Cir 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded

without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F3d 503, 511 (9th Cir 2001).

The ALJ's decision makes clear that he considered Mrs. Whalen's statements. Admin. R. 467-68. He did not discredit her description of Whalen's symptoms or their impact on his ability to work. The ALJ could reasonably conclude that the symptoms Mrs. Whalen described in general terms would not preclude work meeting the specific limitations in his RFC assessment. For example, the ALJ could reasonably conclude the periods of irritable mood described by Mrs. Whalen would not preclude work involving limited contact with others. The ALJ could find the lack of focus and ambition Mrs. Whalen described would not preclude jobs involving only simple, routine, repetitive tasks. Accordingly, the ALJ did not disregard or discount Mrs. Whalen's written statements and he was not required to give reasons for doing so.

C.      **Medical Source Statements**

Whalen challenges the ALJ's evaluation of the reports of several mental health care providers. Dr. Finney saw Whalen for his original VA PTSD examination on November 14, 1996, five months after his insured status expired. Admin. R. 296. Dr. Finney did not administer diagnostic tests. *Id.* at 300. The examination consisted of an interview in which Dr. Finney explained and reviewed the criteria for PTSD with Whalen. Whalen endorsed daily intrusive thoughts about combat in Vietnam, hypervigilance, and an exaggerated startle response. *Id.* at 298-300. Dr. Finney opined that Whalen's symptoms satisfied the diagnostic criteria for PTSD. *Id*. at 300. Whalen reported he had experienced these symptoms since returning from Vietnam, which led Dr. Finney to conclude it was a chronic condition. Dr. Finney assigned a global

assessment of functioning ("GAF") score of 55, indicating moderate symptoms, or moderate difficulty in social, occupational, or school functioning.  *Id.* at 301.  American Psychiatric Associaition, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) 30-32.  For objective findings, Dr. Finney found Whalen anxious, but made benign clinical observations regarding Whalen's appearance, eye contact, psychomotor activity, manner of relating, memory, thinking, judgment, and insight.  *Id.* at 297-98.

      Whalen contends the ALJ improperly rejected Dr. Finney's statement that PTSD had "adversely impacted his occupational pursuits, especially in the last 7- 8 years."  *Id.* at 301.  The ALJ did not reject this statement or any other aspect of Dr. Finney's opinion.  The ALJ's findings are entirely consistent with Dr. Finney's opinion regarding the diagnosis of PTSD and the existence of symptoms affecting Whalen's ability to perform work-related functions.  The ALJ identified PTSD as a severe impairment and included limitations in the RFC assessment to accommodate the resulting functional deficits.  Whalen's argument implies that Dr. Finney's opinion includes functional limitations in excess of those in the RFC assessment, but Dr. Finney did not identify any specific functional limitations in work-related abilities.

      To the extent Dr. Finney's opinion suggested additional limitations, the ALJ provided legally adequate reasons for excluding them from his RFC assessment.  An ALJ can reject the uncontradicted opinion of an examining physician for clear and convincing reasons.  If contradicted by another doctor, then the opinion can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002); *Lester v. Chater*, 81 F3d 821, 830-31 (9th Cir 1995); *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989).

10 - FINDINGS AND RECOMMENDATION

The ALJ pointed out that Whalen failed to produce medical evidence of PTSD symptoms from the relevant period. Admin. R. 463. A claimant's failure to seek care for allegedly disabling symptoms reasonably casts doubt on the claimed severity of such symptoms. Whalen did not seek treatment for the symptoms that allegedly disabled him at the time he stopped working or at any other time during the relevant period. *Bruton*, 268 F3d at 828.

The ALJ also found any additional limitations in Dr. Finney's opinion inconsistent with Whalen's work history. Admin. R. 463. Whalen told Dr. Finney he had experienced the symptoms he described since returning from Vietnam in 1970. *Id*. at 300. Yet those symptoms had not prevented Whalen from working successfully for 20 years. Dr. Finney's opinion that PTSD symptoms had a particularly adverse impact on Whalen's ability to work during the previous seven to eight years does not explain how Whalen was able to work with the general public as a military recruiter. That position continued until December 1990 and was terminated for reasons unrelated to PTSD symptoms.

The ALJ believed Dr. Finney relied unduly on Whalen's subjective reports without accounting for inconsistencies they contained. *Id*. at 463-64. For example, Whalen claimed difficulties with concentration and memory, but was attending college classes. Dr. Finney did not indicate any clinical evidence of problems in these areas in his objective findings. Despite claims of social difficulties, nervousness, and a heightened desire for isolation, Whalen arrived at the interview still inebriated after a spending the previous night in a bar with friends engaging in social activities inconsistent his claims. The ALJ reasonably questioned Dr. Finney's reliance on statements Whalen made while inebriated. Dr. Finney's reliance on Whalen's subjective statements is highlighted by his opinion that PTSD symptoms were likely to have contributed to

11 - FINDINGS AND RECOMMENDATION

his cardiac problems. Despite Whalen's apparent assertion of cardiac problems to Dr. Finney, the record shows he did not experience an increase in cardiac problems during the relevant period. He had an asymptomatic infarct long before the alleged onset of disability. Despite these shortcomings in Whalen's subjective reports, Dr. Finney apparently accepted them at face value. A physician's opinion is no more credible than the statements upon which it is based. *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989); *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001). Accordingly, any implication in Dr. Finney's opinion of limitations in excess of the RFC assessment were properly discounted.

In July 1999, three years after the end of the relevant period, Gary Sacks, Ph.D., performed a PTSD evaluation as part of Whalen's request for an increase in VA compensation. The evaluation included an interview, mental status examination, and review of VA medical records. Admin. R. 194-96. In the interim between evaluations, Whalen did not seek mental health treatment, despite Dr. Finney's recommendation that he obtain PTSD counseling and an evaluation for alcohol abuse treatment. *Id*. at 301. Whalen told Dr. Sacks he no longer worked because being in a confined space made him feel "nervous and hyper." *Id.* at 195. Whalen denied anger control problems and noted he had never been in a fight. Dr. Sacks opined Whalen's PTSD was relatively under control as long as he remained in open spaces and familiar situations, but that it was likely his symptoms would increase in intensity if he were to attempt a return to work. *Id.* at 196.

Dr. Sacks did not offer an opinion about Whalen's condition during the relevant period. He did not identify specific functional limitations in work-related activities or opine that Whalen would be unable to perform work with the precautions described in the ALJ's RFC assessment.

Accordingly, the ALJ did not reject Dr. Sacks's opinion, expressly or by implication, and was not required to provide reasons for doing so.

In February 2000, Gary Monkarsh, Ph.D., performed another PTSD increase evaluation for the VA. *Id.* at 189-90. Dr. Monkarsh opined that Whalen's then-current emotional impairment appeared to be in the moderate to severe range and that he should be considered for an increase in his VA disability rating. *Id.* at 190. Dr. Monkarsh did not offer an opinion about Whalen's functional limitations before June 30, 1996. Even with respect to current limitations, Dr. Monkarsh did not identify specific work functions Whalen could not do or indicate that Whalen would be unable to work within the restrictions of the ALJ's RFC assessment. The ALJ did not reject Dr. Monkarsh's opinion expressly or by any reasonable implication. Accordingly, he had no duty to explain such a rejection.

On June 11, 2007, Sally Clayton, Ph.D., testified as a medical expert at the hearing before the ALJ. Dr. Clayton testified that it was likely Whalen's PTSD symptoms were present during the relevant period, given that Dr. Finney found them clearly manifested in November of 1996. *Id.* at 549. She opined that, during the relevant time, Whalen would have had mild interference with activities of daily living, moderate limitations in social functioning, marked limitation in concentration, persistence, or pace, and no episodes of decompensation during the relevant period. *Id.* at 550-51.

The ALJ accepted Dr. Clayton's expert opinion with the single exception that he found Whalen had no more than moderate limitations in concentration, persistence, or pace. *Id.* at 465. The ALJ found the presence of marked limitations during the relevant period unsupported by the record for the reasons described previously. The record contained no evidence of such

13 - FINDINGS AND RECOMMENDATION

limitations at that time, and Whalen participated in activities that were inconsistent with marked functional limitations in concentration, persistence, or pace. The ALJ found Whalen's assertions of limitations while engaging in those activities not entirely credible, and Dr. Clayton's opinion regarding the relevant period of time was based primarily on Whalen's testimony. Accordingly, the ALJ provided legally adequate reasoning for partially discounting Dr. Clayton's opinion.

Ms. Halleck interviewed Whalen in December 1996. Whalen told her he had daily intrusive thoughts about Vietnam, triggered by helicopters and certain smells. He reported a startle response when being awakened and difficulty in crowds and confined spaces. Whalen said he was often irritable, but did not engage in physically or verbally abusive outbursts. Based on the interview, Ms. Halleck concluded that Whalen showed definite symptoms of chronic PTSD. She recommended that he obtain individual and group PTSD counseling. *Id*. at 330-32.

Whalen did not seek therapy, however. Ms. Halleck did a followup interview in November 1997. *Id*. at 323-24. Whalen came across as angry and reported difficulty dealing with people. He stated he tried to isolate himself as much as he could. Whalen told Ms. Halleck he was unemployed except for a few odd jobs. He said employers would not hire him because of his medical problems. Ms. Halleck concluded he was "unable to maintain or even find a job because of problems with authority." *Id.* at 324. She opined that Whalen's PTSD symptoms had increased since the prior interview, especially with respect to difficulty with anger control. She again recommended that Whalen undergo PTSD counseling. *Id.* at 324.

The ALJ's RFC findings did not conflict with Ms. Halleck's opinion. The ALJ found that Whalen's ability to work was significantly affected by PTSD symptoms, and the RFC assessment reflects his limitations. Ms. Halleck's statement that Whalen could not obtain work

14 - FINDINGS AND RECOMMENDATION

due to problems with authority related to the increase in symptoms she perceived after the earlier interview and long after Whalen's insured status expired. Accordingly, it did not relate to Whalen's working capacity during the relevant period.

To the extent Ms. Halleck's opinion did relate back to the relevant period, the ALJ gave it "little weight." *Id.* at 464. Ms. Halleck is not an accepted medical source under the regulations, but her opinion must be considered, and the ALJ must explain the weight he gave the opinion in his decision. 20 CFR § 404.1513(d); SSR 06-03, 2006 WL 2329939 *5-6. The ALJ gave little weight to Ms. Halleck's statement that Whalen could not maintain a job due to problems with authority because it did not appear to relate to the relevant time period, but to an increase in symptoms that occurred later. He also found no evidence corroborating the statement; nothing suggests Whalen ever lost employment due to a problem with authority. He found that Ms. Halleck based her opinion on Whalen's subjective statements which were unreliable for reasons already described. Admin. R. 464. In addition, the ALJ could reasonably conclude that Whalen was not candid in describing his alcohol use and the extent of his volunteer and school activities during the interview with Ms. Halleck. The ALJ considered Ms. Halleck's opinion and provided germane reasoning for giving lttle weight to her statement regarding his inability to work due to problems with authority.

### D.    VA Rating Decision

In May 2001, the VA issued a Rating Decision finding Whalen permanently and totally disabled for VA purposes as of September 3, 1996. Admin. R. 85. The decision was based on a review of Whalen's medical records and all other evidence pertaining to his PTSD. *Id.* at 92. The Board of Veterans' Appeals found the evidence indicated Whalen was "demonstrably

unable to obtain or retain employment." *Id.* at 97. The VA had previously given Whalen a 30% rating for PTSD (presumably in 1996) which was later increased at an unknown date to 50% and then in February 2000 to 70% based on increased symptoms. *Id*. at 91, 465.

A VA disability rating does not bind the ALJ to reach the same result. 20 CFR § 404.1504. In the Ninth Circuit, however, an ALJ "must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F3d 1072, 1076 (9th Cir 2002). The Ninth Circuit recognizes extensive similarities in the purposes, processes and evaluation criteria employed by the two federal programs. *Id.* Despite these similarities, an ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

The ALJ discussed the VA disability Rating Decision and noted that it indicated a progressive increase in symptoms which did not render Whalen unemployable until September 3, 1996. Admin. R. 99, 465-66. Giving full credit to the Rating Decision would establish that Whalen became disabled after his insured status expired. This is consistent with the record as a whole, including the absence of medical evidence during the relevant period, the absence of treatment for PTSD, Whalen's work history and activities, Ms. Halleck's observation of increased symptoms between the two evaluations she conducted, and the findings of Drs. Finney, Sacks, and Monkarsh, upon which the Rating Decision was based. These are persuasive, specific, and valid reasons for the ALJ's conclusion that the Rating Decision was not entitled to controlling weight with respect to Whalen's ability to work during the relevant period. Accordingly, the ALJ did not err in evaluating the VA Rating Decision. *McCartey*, 298 F3d at 1076.

**E.     SSR 85-15**

Whalen contends the ALJ failed to comply with SSR 85-15, which addresses the Commissioner's policies in cases where the claimant has no impairments limiting exertion, but has nonexertional or environmental limitations. SSR 85-15 instructs ALJs to consider on an individualized basis whether the claimant remains able to perform the basic mental demands of unskilled work. 1985 WL 56857 at *5. One consideration is the claimant's ability to react appropriately to stress in the workplace. *Id.* at *6. Whalen argues the ALJ failed to appropriately address his deficits in basic mental activities.

The ALJ's decision makes clear that he considered all the evidence of deficiencies in Whalen's mental functional capacity and accepted those deficiencies that were supported by the record. Whalen argues essentially that the record would support additional limitations. The ALJ found otherwise based on a thorough review of the evidence in the record. The court must uphold the ALJ's factual findings if they are supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Tommasetti*, 533 F3d at 1038. The ALJ's RFC assessment is rational and consistent with the record as a whole and it should not be disturbed.

///
///
///
///
///
///

17 - FINDINGS AND RECOMMENDATION

**II.     Vocational Evidence**

Whalen challenges the vocational evidence on two grounds. He appears to contend that the ALJ should not have relied on vocational testimony from the previous hearing. The Commissioner can show that a claimant is able to do other work which exists in the national economy by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews v. Shalala*, 53 F3d 1035, 1043 (9th Cir 1995). The ALJ relied on vocational testimony elicited in the previous hearing with a hypothetical question that reflected all the limitations he found reasonably supported by the record. Admin. R. 64-65. This is sufficient to satisfy the Commissioner's burden.

Whalen also claims the hypothetical question did not contain all of his limitations and restrictions. He contends the ALJ should have included additional limitations supported by his subjective allegations, his wife's written statements, and the reports of Drs. Sacks, Monkarsh, Finney, and Clayton, and Ms. Halleck. His arguments with respect to this evidence cannot be sustained for reasons discussed previously in this opinion. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Osenbrock v. Apfel,* 240 F3d 1157, 1164-65 (9th Cir 2001). Whalen's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

///

///

///

///

///

## RECOMMENDATION

The ALJ applied proper legal standards and his findings are supported by substantial evidence in the record as a whole. Therefore, the Commissioner's final decision should be affirmed.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due May 4, 2009. If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

DATED this 16th day of April, 2009.

                                              s/ Janice M. Stewart_____
                                              Janice M. Stewart
                                              United States Magistrate Judge